**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Allied Diversified Construction, Inc.　　　　　　Case No.: 1:16cv334

　　　　　　Plaintiff,　　　　　　　　　Judge Michael R. Barrett

　　v.

Elite Mechanical, Inc., et al.

　　　　　　Defendants.

**OPINION AND ORDER**

This matter is before the Court on: 1) Defendant Elite Mechanical Inc.'s ("Elite") Motion for Partial Judgment on the Pleadings (Doc. 42); and 2) Elite's Motion to Stay Discovery on Piercing the Corporate Veil Claim (Doc. 45).

## I.　　BACKGROUND

The facts, as alleged in Plaintiff Allied Diversified Construction's ("Allied") Amended Complaint (Doc. 33) and construed in favor of Allied are as follows.　Allied is the General Contractor on the Latitude at Deerfield Crossing construction project (the "Project"), a luxury apartment complex being developed in Mason, Ohio.　(Doc. 33, PageID 589-90).　Allied entered into a Subcontract with Elite to install a plumbing system in various buildings being constructed as part of the Project.　(*Id.* at PageID 589).　The Project consisted of installing plumbing systems in three buildings—Building A, Building B, and Building C—and a pool house.　In exchange for the work, Allied agreed to pay Elite a total of $1,033,848.72 under the Subcontract.　*Id.*

Among other things, the Subcontract provided for the quantity and quality of employees and supervisory personnel required to be on-site every day, and included scheduling requirements regarding the completion of the Project.　(*Id.* at PageID 590).　Under the

1

Subcontract, Elite was entitled to payment only for portions of the work completed, and after the work was inspected and approved by Allied and the owner of the Project, Deerfield. (*Id.* at PageID 592).

Allied alleges that Elite failed to provide the minimum number of employees and supervisors, and that those who did work on the Project lacked the requisite skill and experience. (*Id.* at PageID 596). According to Allied, as a result of Elite's failure to follow design specifications, Buildings A and C were unable to timely pass "rough in" inspections, which delayed the Project, causing damage to the buildings. (*Id.* at PageID 596-97).

Moreover, Allied alleges that in December 2014, Elite walked off the Project for a time, although Elite returned to the Project after discussions between the parties. (*Id.* at PageID 597-98). Thereafter, Buildings A and C were unable to obtain final approval. Elite eventually abandoned the Project altogether. (*Id.* at PageID 600). As a result, the Subcontract was terminated. (*Id.* at PageID 605).

Allied alleges that it later found out that Elite was not licensed to perform plumbing work in Ohio at the time it entered into the Subcontract. (*Id.* at PageID607). Instead, Elite asked another company—Affordable 24/7—to apply for and obtain the necessary plumbing permits for the Project. (*Id.*). The relationship between Elite and Affordable 24/7 led to the successful completion and installation of a plumbing system in Building B. (*Id.* at PageID 607). The Amended Complaint alleges that Elite failed to pay Affordable 24/7 for its work in obtaining the permits and overseeing the work on Building B. (*Id.* at PageID 608).

Elite then entered into a separate contract with Ferguson Enterprises, Inc. ("Ferguson") to furnish and install plumbing materials. (*Id.* at PageID 609). Despite providing notice to Allied that Ferguson had been paid in full, the Amended Complaint alleges that was not true. (*Id.*).

2

Rather, Elite made false representations under oath to keep receiving payments from Allied. (*Id.*).  Moreover, Allied alleges Elite was "grossly undercapitalized."  As a result of the foregoing, Allied argues it suffered substantial damages.  (*Id.* at PageID 610).

Allied brings the following claims against Elite[1]: 1) breach of contract; 2) negligence; 3) breach of express and implied warranties; 4) negligent misrepresentation; and 5) negligent supervision.  Relevant to this Motion, Allied also brings a claim for piercing the corporate veil against Philip Young, the founder and owner of Elite.  As discussed more fully herein, because Elite argues Allied fails to state a claim against Philip Young, it moves for judgment on the pleadings as to Count Nine of the Amended Complaint.

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed using the same standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the plausibility standard is not equivalent to a

---

[1] Allied also brings claims against National American Insurance Company, the surety company that provided a performance bond guaranteeing Elite's performance under the Subcontract.

"'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## III.   **ANALYSIS**

Count Nine of the Amended Complaint attempts to pierce the corporate veil and hold Mr. Young personally liable the debts of Elite.

It is well settled that shareholders, officers, and directors are not generally liable for the debts of corporations. *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 510 (Ohio 2008). The exception to this deeply-rooted principle was explained by the Supreme Court of Ohio as follows:

> [S]hareholders are not absolutely immune from liability for the actions of their corporations. "[L]ike every other fiction of the law, when urged to an intent and purpose not within its reason and policy, [the corporate form] may be disregarded." *State ex rel. Atty. Gen.* at paragraph one of the syllabus. Shareholders may thus be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation "for criminal or fraudulent purposes" to the detriment of a third party. *Belvedere*, 67 Ohio St.3d at 287, 289, 617 N.E.2d 1075.

4

*Id.*  Nevertheless, the Court explained that "piercing the corporate veil in this manner remains a 'rare exception,' to be applied only 'in the case of fraud or certain other exceptional circumstances.'"  *Id.* (quoting *Dole Food Co. v. Patrickson* (2003), 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643).  To pierce the corporate veil, a plaintiff must prove each of the following three elements:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind; (2) control was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control.[2]

*Id.* at 510-11 (internal citations omitted).  This Court has previously held that piercing the corporate veil is not a cause of action itself.  *Orrand v. Kin Contractors, LLC*, No. 2:09cv1129, 2011 WL 1238301, at *4 (S.D. Ohio Mar. 30, 2011).  Rather, "it is a means of imposing liability on a defendant; therefore, each basis for piercing the corporate veil is an independent ground of recovery that must be specifically pleaded."  *Id.*

In this case, Allied makes the following allegations specific to its piercing the corporate veil claim against Young:

> 140.    Allied incorporates by reference Paragraphs 1 through 139 of the Complaint, as if fully rewritten herein.

> 141.    Young is the founder and owner of Elite.   Young is the source of funding for Elite, and manages and control Elite's daily operations.

> 142.    At all relevant times herein, Young exercised complete dominion and control over Elite. This control over Elite rendered the company without a separate mind, will, or existence of its own.

> 143.    Young exercised control over Elite in such a manner to defraud and harm Allied. Elite, through Young, failed to observe corporate formalities and

---

[2] The three-pronged test for piercing the corporate veil was first articulated in *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos. Inc.*, 67 Ohio St.3d 506, 513 (Ohio 1993).  The Ohio Supreme Court revised the test in *Dombroski*.  For ease of reference, the Court refers to the test as the *Belvedere-Dombroski* test.

was grossly undercapitalized at all relevant times herein, rendering it unable to pay vendors and subcontractors that performed work on the Project.

144. Specifically, upon information and belief, Elite, through Young, was diverting funds received from Allied under the Subcontract to other projects it was contemporaneously working on in Georgia, South Carolina, and Tennessee. Despite receiving a majority of the Subcontract amount from Allied, Elite was unable to pay vendors such as Ferguson for plumbing materials needed to build and install the Plumbing System. Elite was also unable to pay subcontractors it hired to perform work on the Project, including, but not limited to, Affordable 24/7.

145. Moreover, without informing Allied, Young pulled most of the experienced plumbers working for Elite off of the Project and sent them to other jobs Elite was working on in Georgia, South Carolina, and Tennessee. This left the Project without a supervisor or any experienced, licensed plumber, ultimately resulting in the delayed and defective Plumbing System discussed above in detail.

146. Although Allied was making payments to Elite under the Subcontract, Elite, through Young, refused to pay many of its experienced plumbers who performed work on Building B, causing them to walk off the Project before completing work on Buildings A and C. Again, Elite did not have any experienced, licensed plumbers left to work on the Project, leading Young to hire cheap, undocumented and inexperienced labor simply to appear on the jobsite. Naturally, this contributed to the significant delays and defects with the Plumbing System.

147. As a direct and proximate result of Young's control and actions, Allied has suffered unjust loss and injury, for which Young is personally liable.

148. By virtue of the foregoing, this Court should pierce the corporate veil and permit Allied to have judgment against Young for his actions and omissions as set forth herein in an amount in excess of $7,200,000.00, the precise amount to be proven at the trial of this action.

(*Id.* at PageID 617-19).

## 1. **Control Over Corporation**

The first prong of the *Belvedere-Dombroski* test is a recitation of the alter-ego doctrine.

To satisfy this prong then, Allied must demonstrate that Young and Elite are "fundamentally indistinguishable." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005)

(quoting *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.*, 617 N.E.2d 1075, 1086

6

(Ohio 1993)). Courts consider a non-exclusive list of factors under an alter-ego doctrine analysis, including the following:

> (1) grossly inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor corporation at the time the debt is incurred; (4) shareholders holding themselves out as personally liable for certain corporate obligations; (5) diversion of funds or other property of the company property for personal use; (6) absence of corporate records; and (7) the fact that the corporation was a mere façade for the operations of the dominant shareholder(s).

*Id.*

Allied sets forth allegations that Young exercised complete dominion and control over Elite rendering the company without a separate mind, will, or existence of its own. Moreover, Allied alleges that Young is the founder and owner of Elite, the source of funding for Elite, and that he manages and controls Elite's daily operations. Finally, Allied alleges that Elite, through Young, failed to observe corporate formalities and was grossly undercapitalized so that Elite was unable to pay contractors and subcontractors. Elite argues, however, that such boilerplate allegations are insufficient to withstand a motion for judgment on the pleadings.

On the contrary, Allied cites a recent decision by this Court, *Cap City Dental Lab, LLC v. Ladd*, No. 2:15cv2407, 2016 WL 4573993, in support of its argument that the allegations set forth are sufficient to state a claim under the first prong of the *Belvedere-Dombroski* test. In *Cap City*, the Court found that the allegations were insufficient to establish the control element. *Id.* at *12. Nevertheless, the Court found that because control over a corporation is a fact-sensitive inquiry, a veil-piercing claim should not be dismissed without the opportunity to conduct discovery. *Id.* It is true that in general, "the question of whether [a shareholder] exercised a degree of control over [a corporation] justifying [a] Court's holding it accountable ... is a fact-sensitive question which ... should not be answered until the Plaintiff[ ] ha[s] had some

opportunity to conduct discovery on this matter." *Orrand*, 2011 WL 1238301, at *4 (quoting *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003)). Elite acknowledges that district courts are reluctant to dismiss veil-piercing claims on the basis of failure to sufficiently plead the control element without the benefit of discovery.

Accordingly, while Allied's pleadings do little more than provide a recitation of the factors considered in an alter-ego analysis, the Court finds that failure to plead sufficient facts to support the first prong of the *Belvedere-Dombroski* test does not itself warrant dismissal.

### 2. <u>Fraud or Illegal Act</u>

The Court in *Dombroski* addressed the question of whether a court could pierce the corporate veil as a result of unjust or inequitable acts that do not rise to the level of fraud or an illegal act. *Dombroski*, 119 Ohio St.3d at 513-14. The Court answered the question in the negative, finding that limited shareholder liability remains the rule, while piercing the corporate veil is the "rare exception." *Id.* at 512. Nevertheless, the Court did expand the *Belvedere* test in a limited manner to allow piercing the corporate veil when shareholders exercise control over a corporation in such a manner to commit fraud, an illegal act, or *a similarly unlawful act*. *Id.* at 513. The Court explained that this limited expansion should be applied "cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." *Id.*

Here, Allied has not brought a claim for fraud against Elite. Thus, the question is whether Allied has sufficiently plead that Young controlled Elite in such a manner as to commit an illegal act or similarly unlawful act against Allied.

Elite argues that Allied's piercing the corporate veil claim is simply a recitation of its breach of contract claim. Courts have often held that a breach of contract claim, without more, is not sufficient to pierce the corporate veil. *See Ohio Edison Co. v. Frontier North, Inc.*, No. 5:14cv321, 2014 WL 6389564, at *12 (N.D. Ohio Nov. 14, 2014).

Allied alleges that Young diverted funds received from Allied under the Subcontract to other projects on which it was contemporaneously working. Allied cites *RAM Const. Services of Michigan, Inc. v. TH Restoration, Inc.*, in support of its argument that such allegations are sufficient to survive a motion for judgment on the pleadings. In *RAM*, however, the plaintiff alleged that the shareholders diverted funds for their own personal use, despite representing that the funds would be used solely to fund the construction project. Here, Allied has not alleged that Young used Elite's funds for his own personal use. Thus, the allegations against Young in this case do not appear to be as egregious as those plead against the shareholders in *RAM*.

In addition, however, Allied alleges that Elite made false representations under oath in order to keep receiving payments from Allied. (Doc. 33, PageID 609). Yet, despite receiving a majority of the Subcontract amount from Allied, it alleges Elite was unable to pay vendors.

The Court is skeptical that Allied will ultimately be able to establish that Young's conduct rose to the level of extreme shareholder misconduct necessary to pierce the corporate veil. Nevertheless, the undersigned finds that when construing the Amended Complaint in the light most favorable to Allied, accepting its allegations as true, and drawing all reasonable inferences in favor of Allied, the allegations set forth satisfy the second prong of the *Belvedere-Dombroski* test at this early pleading stage.

**3.** **Injury or Unjust Loss**

The Court also finds that Allied has sufficiently pled the third prong of the *Belvedere-Dombroski* test – namely, that Allied suffered injury or unjust loss as a result of Young's control over Elite.  Allied sets forth allegations that Elite, as a result of Young's control, hired cheap, undocumented and inexperienced labor, which contributed to significant delays and defects with the plumbing system.  In the end, Allied was left with a defective Plumbing System.  These allegations are sufficient to survive the present motion.

**IV.** **CONCLUSION**

Consistent with the foregoing, upon review of the Amended Complaint, the Court finds that Allied has sufficiently plead a piercing the corporate veil claim against Young. Accordingly, the Court declines to dismiss Count Nine of Allied's Amended Complaint. Therefore, it is hereby ordered that:

1) Elite's Motion for Partial Judgment on the Pleadings (Doc. 42) is **DENIED**; and

2) Elite's Motion to Stay Discovery on Piercing the Corporate Veil Claim (Doc. 45) is **DENIED AS MOOT**.

   **IT IS SO ORDERED**.

      s/Michael R. Barrett     
     Michael R. Barrett, Judge
     United States District Court

10